# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICIA D. BEALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-366-SPS |
| ) | |
| COMMISSIONER of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Patricia D. Beall requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-two years old at the time of the administrative hearing (Tr. 42, 162). She completed eighth grade and has no past relevant work (Tr. 58, 185). The claimant alleges that she has been unable to work since July 1, 2014, due to a nervous place in her arm, liver problems, posttraumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), and anxiety (Tr. 162, 184).

## Procedural History

On July 27, 2015, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 27, 162-67). Her application was denied. ALJ James Bentley conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated November 1, 2016 (Tr. 27-36). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except she was limited to simple tasks with routine supervision, occasional contact with coworkers and supervisors on a superficial work-basis, and no work-related contact with the general public (Tr. 32). The ALJ then

concluded that the claimant was not disabled because there was work that she could perform in the national economy, *e. g.*, kitchen helper, hospital cleaner, and laundry worker (Tr. 35-36).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) analyze the opinion of treating physician Dr. Theresa Farrow, and (ii) evaluate her subjective statements. The Court agrees with the claimant's first contention, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant's bipolar I disorder, PTSD, methamphetamine dependence in early remission, borderline personality disorder, hepatitis C, and tobacco dependence were severe impairments, but that her headaches were nonsevere (Tr. 20-22). The medical evidence relevant to this appeal reveals that the claimant presented to Dr. Farrow at Carl Albert Community Mental Health Center ("CACMHC") on September 6, 2013, and reported problems with depression and anxiety most of her life, but worsening symptoms the previous two or three years as well as increased anger (Tr. 301-03). Dr. Farrow diagnosed the claimant with bipolar disorder, mixed, severe, with psychotic features; ADHD, combined type; PTSD; social phobia; amphetamine dependence in remission; and borderline personality disorder (Tr. 302). The claimant next sought mental health treatment on February 10, 2016, when she presented to Ellen Huffmaster, a nurse practitioner at CACMHC (Tr. 429-31). The claimant reported she had not been on medication for nearly three years and remained symptomatic during that time (Tr. 431).

4

Ms. Huffmaster diagnosed the claimant with bipolar disease not otherwise specified (by history), amphetamine abuse in questionable state of remission, anxiety not otherwise specified, and borderline personality disorder (Tr. 431). Additionally, Ms. Huffmaster included substance induced mood disorder, amphetamine abuse, malingering, and major depressive disorder as differential diagnoses (Tr. 431).

On July 5, 2016, the claimant returned to Dr. Farrow and indicated that she had not taken her medication in three months due to nausea, that her depression and anxiety were worsening, and that she was experiencing hallucinations and paranoia (Tr. 422-24). Dr. Farrow diagnosed the claimant with PTSD, bipolar disorder, methamphetamine abuse, overweight, vitamin D deficiency, status post sepsis, chronic pancreatitis, and hepatitis C (Tr. 423). On September 9, 2016, Dr. Farrow completed a Mental RFC Assessment in which she opined that the claimant was markedly limited in nine functional categories, including her ability to understand and remember detailed instructions, maintain attendance and concentration for extended periods, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 434-35). She also noted the claimant had moderate limitations in six categories, including her ability to work in coordination with or proximity to others without being distracted by them and to interact appropriately with the general public (Tr. 434–35).

Dr. Kathleen Ward conducted a consultative mental status examination of the claimant on October 1, 2015 (Tr. 393-96). Dr. Ward observed that the claimant was anxious and fidgety; spoke with a rapid mumble; was non-spontaneous, careful, and

5

guarded in her responses related to her substance use and legal issues; gave limited effort to the examination by easily surrendering; and appeared to be a marginally reliable historian (Tr. 395-96). Dr. Ward assessed the claimant with amphetamine use disorder of unknown remission status, PTSD, and unspecified mood disorder versus major depressive disorder (Tr. 396).

On March 1, 2016, state agency psychologist Dr. Joan Holloway completed a Mental RFC Assessment and found that the claimant was moderately limited in her ability to understand, remember, and carry out detailed instructions, and markedly limited in her ability to interact appropriately with the general public (Tr. 81-83). Dr. Holloway explained that the claimant could perform simple and some complex tasks, relate to supervisors as needed, have superficial contact with co-workers, and adapt to a work environment, but could not interact with the general public (Tr. 83).

The medical opinions of a treating physician such as Dr. Farrow are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship, (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting

the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ gave diminished weight to Dr. Farrow's opinion concerning the claimant's work-related limitations for the following reasons: (i) she briefly treated the claimant, (ii) she did not account for the claimant's noncompliance with treatment, and (iii) her opinion was inconsistent with Ms. Huffmaster's February 2016 treatment note suggesting the claimant was a malingerer (Tr. 34). The ALJ's analysis is legally deficient for several reasons.

First, the ALJ's finding that Dr. Farrow briefly treated the claimant was arguably a legitimate basis for rejecting her opinion, however the ALJ failed to analyze Dr. Farrow's opinion in accordance with any of the other *Watkins* factors outlined above. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§ ] 404.1527.'"), *quoting Watkins,* 350 F.3d at 1300. The ALJ referenced the correct analysis at the beginning of step four, but in focusing solely on a single factor, did not fulfill the weighing analysis required by *Watkins*. This analysis was particularly important here because Dr. Farrow was the only physician in the record who treated the claimant for her mental impairments.

7

Additionally, it was clearly improper for the ALJ to reject Dr. Farrow's opinion upon speculation that she did not consider the claimant's noncompliance with treatment, a fact that is belied by Dr. Farrow's own treatment notes (Tr. 301, 422). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [emphasis in original]. Moreover, the ALJ did not consider whether the claimant had an acceptable reason for such noncompliance. *See Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir. 1987), *citing Weakley v. Heckler,* 795 F.2d 64, 66 (10th Cir. 1986), *quoting Teter v. Hecker,* 775 F.2d 1104, 1107 (10th Cir. 1985) ("In reviewing the impact of a claimant's failure to undertake treatment on a determination of disability, we consider four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) *whether the refusal was without justifiable excuse*.") [emphasis added]. This analysis, which is entirely absent in the ALJ's opinion, was particularly important here because both the claimant and her attorney referenced her inability to afford treatment (Tr. 45, 47). *See, e. g., Thompson v. Sullivan,* 987 F.2d 1482, 1489-90 (10th Cir. 1993) (An inability to pay may justify the failure to follow treatment).

Finally, although the ALJ referred to specific evidence when discussing the inconsistencies between Dr. Farrow's opinion and the evidence of record, he minimized or mischaracterized it. For example, the ALJ found that Ms. Huffmaster's February 2016

treatment note suggested that the claimant was a malingerer (Tr. 34). Although Ms. Huffmaster *did* provide a differential diagnosis of malingering, she did not conclusively determine that the claimant was a malingerer (Tr. 429). Similarly, the ALJ overlooked Ms. Huffmaster's examination findings that the claimant had a depressed, anxious, and labile mood; congruent affect; impaired judgment; poor insight; and poor impulse control, all of which are very similar to Dr. Farrow's most recent examination findings (Tr. 422-23, 430-31). This is improper picking and choosing. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'").

Because the ALJ failed to properly evaluate the opinions of the claimant's treating physician, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis. On remand, the ALJ should evaluate Dr. Farrow's opinion in accordance with the appropriate standards and determine what impact such evaluation has on the claimant's RFC and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 6th day of March, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**